```
                    UNITED STATES DISTRICT COURT
                     DISTRICT OF MASSACHUSETTS
```

TOWN OF SAUGUS,
     Plaintiff,


          v.                                  CIVIL ACTION NO.
                                           10-11258-MBB

ZURICH AMERICAN INSURANCE COMPANY and
MARYLAND CASUALTY COMPANY,
     Defendants.


**MEMORANDUM AND ORDER RE:**
**MOTION FOR PARTIAL SUMMARY JUDGMENT BY PLAINTIFF TOWN OF SAUGUS**
**(DOCKET ENTRY # 13); DEFENDANTS' CROSS MOTION FOR SUMMARY**
<u>**JUDGMENT (DOCKET ENTRY # 17)**</u>


**June 13, 2011**


**BOWLER, U.S.M.J.**

     Pending before this court is a motion for partial summary judgment under Rule 56, Fed. R. Civ. P., filed by plaintiff Town of Saugus ("plaintiff" or "Town of Saugus"). (Docket Entry # 13). Plaintiff seeks a declaration that as a matter of law, defendant Zurich American Insurance Company ("defendant Zurich") and defendant Maryland Casualty Company ("defendant Maryland") breached their duties to defend plaintiff. Defendant Zurich and defendant Maryland (collectively: "defendants") filed a joint cross motion for summary judgment seeking dismissal of all claims. (Docket Entry # 17).

The claims arise out of a civil action filed in Massachusetts Superior Court (Essex County) by third party plaintiffs David M. Daggett, Annabelle R. Wilson and Peter Levy, Trustees of the Evelyn W. Daggett Trust (collectively: "Daggett plaintiffs"). The underlying complaint, <u>David M. Daggett, Annabelle R. Wilson and Peter Levy, Trustees of the Evelyn W. Daggett Trust v. Town of Saugus</u>, Civil Action No. 2009-CV-1924 (the "Daggett action" or "Daggett complaint"), alleges that the Town of Saugus unlawfully demolished a home owned by the Daggett plaintiffs and illegally collected the costs associated with the demolition. Defendant Zurich and defendant Maryland separately denied coverage to plaintiff with regards to defendants' duty to defend.

PROCEDURAL BACKGROUND

Plaintiff filed this action in May 2010 in Massachusetts Superior Court (Essex County). (Docket Entry # 1). Plaintiff seeks a declaratory judgment on the rights and legal relations between the parties with regards to the duty to defend and indemnify (Count I) and damages related to the breach of the insurance contracts (Count II). In July 2010, defendants filed a timely notice of removal.

Currently before this court is a partial summary judgment motion filed by plaintiff on Count I (Docket Entry # 13) and a

joint summary judgment filed by defendants (Docket Entry # 17). After conducting a hearing on April 1, 2011, this court took the motions under advisement.

STANDARD OF REVIEW

Summary judgment is designed "'to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required.'" Davila v. Corporacion De Puerto Rico Para La Difusion Publica, 498 F.3d 9, 12 (1st Cir. 2007). It is appropriate when the summary judgment record shows "there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." American Steel Erectors, Inc. v. Local Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers, 536 F.3d 68, 75 (1st Cir. 2008). "A fact is material if it carries with it the potential to affect the outcome of the suit under the applicable law." Id. Facts are viewed in favor of the non-moving party. See Noon v. Staples, Inc., 556 F.3d 20, 23 (1st Cir. 2009). Cross-motions for summary judgment do not alter the summary judgment standard, but instead simply require a determination of "whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Scottsdale Ins. Co. v. Torres, 561 F.3d 74,

3

77 (1st Cir. 2009).

## FACTUAL BACKGROUND[1]

On August 2, 2006, fire seriously damaged a house located on the Daggett plaintiffs' property (the "Property" or "Daggett"). The Saugus Fire Department extinguished the fire.

The Daggett plaintiffs contend that the Town of Saugus then demolished the house and removed the debris without proper legal notice. In a letter dated September 7, 2006, the Town of Saugus sought reimbursement for the expenses related to the demolition of the house, which it was entitled to under Massachusetts law. See Mass. Gen. L. 143, § 9. The Daggett plaintiffs had 30 days to pay the $38,812.80 owed and, if they failed to do so, the Town of Saugus would place a lien on the Property and include the amount in the 2007 real estate taxes.

On September 19, 2006, before the 30 day time period to pay had elapsed, the Town of Saugus placed a tax lien on the property. On December 29, 2006, the Town of Saugus issued the fiscal year 2007 tax bill to the Daggett plaintiffs, which included a "special assessment" of $40,133.49. While the Daggett plaintiffs believed the Town of Saugus has acted improperly with regards to the demolition and subsequent assessment, they paid the special assessment to preserve their rights to the property.

---

[1] Citations to the record are provided primarily for direct quotations.

The $40,133.49 was paid in two installments, on or before February 1 and May 1, 2007.

On January 31, 2007, the Daggett plaintiffs filed an application for a tax abatement for the special assessment on the Property, which was denied on March 20, 2007. The Daggett plaintiffs filed an appeal with the Appellate Tax Board on June 15, 2007. The Town of Saugus sought a dismissal for lack of jurisdiction, which was granted on May 27, 2008. On October 29, 2008, the Daggett plaintiffs filed an appeal contesting the dismissal with the Massachusetts Court of Appeals. The court affirmed the dismissal on October 9, 2009.

On October 2, 2009, the Daggett plaintiffs filed the aforementioned Daggett action in Massachusetts Superior Court (Essex County). They filed an amended complaint on December 28, 2009. In the Daggett complaint, the Daggett plaintiffs sought relief for money had and received and unjust enrichment (Count I), breach of contract (Count II), declaratory judgment (Count III) and violations of 42 U.S.C. § 1983 ("section 1983 claims") (Count IV). All of the counts seek relief in the amount of the special assessment, $40,133.49, plus interest, costs and attorneys' fees. Count III seeks a declaration that the Town of Saugus' actions were illegal. Count IV also seeks reasonably attorneys' fees and costs pursuant to 42 U.S.C. § 1988. (Docket Entry # 1).

In 2009, defendant Zurich and defendant Maryland each issued the Town of Saugus an insurance policy. The Zurich policy was a Commercial General Liability policy and the Maryland policy was a Public Official Liability policy.

The Zurich policy was an occurrence policy, covering bodily injury and property damage liability in coverage A and personal and advertising injuries in coverage B, both subject to relevant exclusions as described below. The coverage was valid from July 1, 2009 to July 1, 2010. The relevant language from coverage A states that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which the insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at out discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

(Docket Entry # 16, Ex. A). The policy only applied to bodily injury and property damage if "(1) The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the covered territory'; (2) The 'bodily injury' or 'property damage' occurs during the policy period." (Docket Entry # 16, Ex. A). The policy also contained several exclusions, including "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured" and "'[b]odily injury' or 'property damage' for which the insured is obligated to pay

6

damages by reason of the assumption of liability in a contract or agreement." (Docket Entry # 16, Ex. A).

The coverage B section of the policy covers personal and advertising injury, defined as:

> (a) false arrest, detention or imprisonment; (b) malicious prosecution; (c) the wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of the owner, landlord or lessor; (d) oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; (e) oral or written publication, in any manner, of material that violates a person's right to privacy; (f) the use of another's advertising idea in your "advertisement"; or (g) infringing upon another's copyright, trade dress or slogan in you "advertisement".

(Docket Entry # 16, Ex. A). Defendant Zurich agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal and advertising injury' to which the insurance applies." (Docket Entry # 16, Ex. A).

The Maryland policy was a claims made policy.[2] It was "written on a claims made basis and covers only claims first made against the insured during the policy period or the extended reporting period, if exercised." (Docket Entry # 16, Ex. B). The policy was effective from July 1, 2009 to July 1, 2010, with

---

[2] A claims made policy, as opposed to an occurrence policy, provides insurance for claims made during the policy period, so long as the cause of action did not arise before the retroactive claim date. See Hartford Fire Ins. Co. v. California, 509 U.S. 764, 771 (1993).

a retroactive claim date of July 1 1994. The policy included several exclusions, including the following:

> (1) Based upon or attributable to the insured gaining any profit, advantage or remuneration to which the insured is not entitled . . . (3) Arising from bodily injury, sickness, emotional distress, mental anguish, disease or death of any person, or for damage to or destruction of any property, including diminution of value or loss of use . . . (9) Arising from all pending or prior litigation as of the policy effective date and all future "claims" arising from such pending or prior litigation.

(Docket Entry # 16, Ex. B).

When the Town of Saugus received the complaint in the Daggett action, it promptly notified defendant Zurich seeking defense and coverage. On January 27, 2010, defendant Zurich sent plaintiff a letter denying coverage. Defendant Zurich stated that the occurrence was in 2006, which was outside of the policy period. Even if the occurrence was during the policy period, there would be no duty to defend or indemnify because the claims fall into the "expected or intended injury" exclusion as well as the "contractual liability" exclusion. Defendant Zurich also stated that there was no personal or advertising injury under the definition of the policy and therefore there was no duty to defend or indemnify under coverage B. Defendant Zurich further stated that it was not waiving its rights to other claims or defenses not mentioned in the letter.

After receiving the denial notice from defendant Zurich, plaintiff then requested coverage from defendant Maryland. On

February 18, 2010, defendant Maryland sent a letter to plaintiff denying coverage. The reasons stated for the denial of the claim were that the claim was based on the insured gaining profit, advantage or remuneration and that the claim arose from property damage. Defendant Maryland also stated that it was not waiving its rights to other claims or defenses not mentioned within the letter.

DISCUSSION

I. Insurance Law Rules of Construction

Insurance contracts are interpreted using standard rules of contract interpretation. See Nat'l Union Fire Ins. Co. v. West Lake Acad., 548 F.3d 8, 9 (1st Cir. 2008). Issues of interpretation are usually resolved as a matter of law. See Genzyme Corp. v. Fed. Ins. Co., 622 F.3d 62, 69 (1st Cir. 2010) (citing Preferred Mut. Ins. Co. v. Travelers' Cos., 127 F.3d 136, 137 (1st Cir. 1997)). Words within policies are construed "according to the fair meaning of language used, as applied to the subject matter." Scottsdale Ins. Co. v. Carrabassett Trading Co., 561 F.3d 74, 77 (1st Cir. 2009) (citing Jacobs v. U.S. Fid. Guar. Ins. Co., 627 N.E.2d 462, 464 (Mass. 1994)). "Where the words in the policy are not ambiguous, they must be construed in their usual and ordinary sense." Id. Where ambiguity does exist, the ambiguity is resolved in favor of the

9

insured. See Genzyme Corp. v. Fed. Ins. Co., 622 F.3d at 72. Ambiguity does not arise solely from the parties having different interpretations of the policy. See Scottsdale Ins. Co. v. Carrabassett Trading Co., 561 F.3d at 77 (citing Lumbermens Mut. Cas. Ins. Co. v. Offices Unlimited Inc., 645 N.E.2d 1165, 1168 (Mass. 1995)).

The insured bears the initial burden to show that the claims fall within the policy. See Nat'l Union Fire Ins. Co. v. West Lake Acad., 548 F.3d 8, 11 (1st Cir. 2008) (citing Nascimento v. Preferred Mut. Ins. Co., 513 F.3d 273, 277 (1st Cir. 2008)). Any exclusion limiting coverage must be proven by the insurer. See Scottsdale Ins. Co. v. Carrabassett Trading Co., 561 F.3d at 78.

In order to establish a duty to defend, the allegations in the claims of the third party plaintiff are matched against the policy. See Nascimento v. Preferred Mut. Ins. Co., 513 F.3d at 276 (citing Herbert A. Sullivan Inc. v. Utica Mutual Insurance Company, 788 N.E.2d 522, 530 (Mass. 2003)). The insurer owes the insured the duty to defend if the allegations in "the underlying lawsuit are reasonably susceptible to an interpretation that they state a claim covered." Scottsdale Ins. Co. v. Carrabassett Trading Co., 651 F.3d at 77 (citing Liquor Liab. Ass'n of Mass. v. Hermitage Ins. Co., 644 N.E.2d 964, 967 (Mass. 1995)). While the duty to defend is broader than the duty to indemnify, when the claims, if assumed true, fall outside the policy, there is no

10

duty to defend or indemnify. See New Fed. Mortg. Corp. v. Nat'l Union Fire Ins. Co., 543 F.3d 7, 11 (1st Cir. 2008) (citations and internal quotation marks omitted). If the insurer has the duty to defend any of the claims, it has the duty to defend all of the claims. See Liberty Mut. Ins. Co. v. Metro. Life Ins. Co., 260 F.3d 54, 63 (1st Cir. 2001).

II. Claims Against Defendant Zurich

Defendant Zurich issued an occurrence policy to plaintiff which provided coverage for occurrences that happened during the policy period. The policy unambiguously states that it only applies if "[t]he 'bodily injury' or 'property damage' occurs during the policy period." (Docket Entry # 16, Ex. A). The policy was in effect from July 1, 2009 to July 1, 2010. (Docket Entry # 16, Ex. A).

Neither side disputes that the fire and placement of lien occurred in 2006 and the payment of the special assessment occurred in 2007; however, the Town of Saugus contends there was an independent due process violation that occurred within the policy period. (Docket Entry # 24). The Daggett plaintiffs' claims allege there was an ongoing violation of their due process, stemming from the unlawful imposition of the lien for a debt that did not exist.

The policy covers commercial general liability. It contains both a duty to defend and a duty to indemnify, so long as the

insured had no knowledge of the injuries prior to the start date of the policy. The insuring agreement, in part, states:

> This insurance applies to "bodily injury" and "property damages" only if . . . Prior to the policy period, no insured listed . . . and no "employee" authorized by you to have or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damages" occurred, then any continuation, change or resumption of such "bodily injury" or "property damages" during or after the policy period will be deemed to have been known prior to the policy period.

(Docket Entry # 16, Ex. A).

Here, the Town of Saugus had the requisite knowledge. There was a fire on the Daggett property in August of 2006 and the Town of Saugus had the house demolished shortly thereafter. The first request that the Daggett plaintiffs pay for the demolition costs was issued on September 7, 2006. That request gave the Daggett plaintiffs 30 days to pay the Town; however, before the time had elapsed, the Town of Saugus placed a lien on the Daggett property. In December 2006, the Town of Saugus issued a tax bill for the following fiscal year, containing the special assessment, which the Daggett plaintiffs paid in a timely fashion in 2007.

The Daggett plaintiffs have always maintained that they did not owe the Town of Saugus the special assessment. In January of 2007, they filed a request for a tax abatement with the Board of Assessors, the first of several legal proceedings they filed regarding the special assessment. When the abatement request was

refused, the Daggett plaintiffs promptly appealed to the Appellate Tax Board in June of 2007. The Appellate Tax Board denied the appeal for lack of jurisdiction, which prompted the Daggett plaintiffs to file an appeal with the Massachusetts Court of Appeals on October 29, 2008.

All of these actions where known to the Town of Saugus prior to the start of coverage on July 1, 2009. The Town of Saugus was aware of the Daggett plaintiffs continued objection to the special assessment, in part because it continued to defend its position in legal actions commenced by the Daggett plaintiffs. The policy from defendant Zurich specifically states that it will not cover claims if the insured (Town of Saugus) knew that the injury or damage had occurred in whole or in part prior to the start date of the policy.

The main injury that the Daggett plaintiffs complain of was the improper destruction of their property, which occurred in 2006, and the unlawful collection of the special assessment, which occurred in 2007. Both of these injuries were completed prior to the policy's effective date.

The Town of Saugus nonetheless contends that the 1983 claims were separate and distinct from the prior claims and occurred during the policy period. The language of the policy, however, unambiguously states that "any continuation, change or resumption of such 'bodily injury' or 'property damages' during or after the

policy period will be deemed to have been known prior to the policy period." (Docket Entry # 16, Ex. A). The alleged violation of the Daggett plaintiffs' due process that occurred during the policy period was a continuation of behavior on the part of the Town of Saugus that the Daggett plaintiffs had been objecting to at least as early as the filing of the tax abatement in January 2007.

In sum, all of the Daggett plaintiffs' claims arise either from injuries that occurred prior to the effective date of the policy or were the continuation of injuries which began prior to the effective date of the policy. On July 1, 2009, the Town of Saugus was aware that the Daggett property had been demolished and the debris removed, that the lien had been placed and collected and that the Daggett plaintiffs had continually objected to the collection of the special assessment. Any claims arising out of these events fall outside the coverage described in the insuring agreement. Summary judgment is therefore warranted in favor of defendant Zurich because the claims arose from events that occurred prior to the policy's effective date.[3]

III. Claims Against Defendant Maryland

The Maryland policy is "written on a claims made basis and covers only claims first made against the insured during the policy period or the extended reporting period, if exercised." (Docket Entry # 16, Ex. B). The policy defines "claim" as:

---

[3] It is unnecessary to address the other issues raised by the parties due to the injuries occurring, in part or in whole, prior to the policy's effective date.

> [T]he filing of a suit against any insured, notice of intent to file a suit, or a demand for money or services of the Insured with respect to injury suffered as a result of a "wrongful act". . . . Furthermore, "claim" shall also include circumstances of which the insured is aware that could resulting (sic) a "claim" against the insured.

(Docket Entry # 16, Ex. B).

Defendant Maryland contends that there is no duty to defend because of the prior litigation exclusion in the policy. (Docket Entry # 18). In the alternative, it maintains that the claims made fall within the profit, advantage or remuneration exclusion. (Docket Entry # 18). While plaintiff addresses each of the exclusions, it also argues that even if the claims fall within the exclusions, there is a duty to defend based on the reasonably expectation of coverage. (Docket Entry # 14).

A. <u>Prior Litigation Exclusion</u>

Defendant Maryland argues there is no duty to defend under its policy because the policy contains an exclusion for claims arising from pending or prior litigation. The exclusion states, "This policy does not apply to any 'claim' made against an insured . . . Arising from all pending or prior litigation as of the policy effective date and all future 'claims' arising from such litigation." (Docket Entry # 16, Ex. B). "Arising from" is to be construed broadly. See <u>Utica Mut. Ins. Co. v. Impallaria</u>, 892 F.2d 1107, 1115, (1st Cir. 1989). Prior to the policy effective date of July 1, 2009, the Daggett plaintiffs and the

15

Town of Saugus had been before the Board of Assessors, the Appellate Tax Board and the Massachusetts Appeals Court on matters pertaining to the return of the special assessment. Defendant Maryland contends that the present dispute therefore falls within the reach of the prior litigation exclusion.

Plaintiff's sole argument against defendant Maryland's claim is that the section 1983 claims (Count IV) are different from and unrelated to the prior litigation involving the tax abatement. (Docket Entry # 24). The Daggett plaintiffs make several allegations that the Town of Saugus violated their due process rights. The Daggett plaintiffs allege that the Town of Saugus, acting under color of state law, demolished the remains of the property without proper notice, imposed an illegal lien on the property, added that non-existent debt to the real estate tax bill, forced the Daggett plaintiffs to pay an illegal special assessment and refused to return the special assessment. The Daggett plaintiffs and the Town of Saugus were in a legal proceeding related to a tax abatement for the special assessment from January 1, 2007, until the Massachusetts Appeals Court denied the Daggett plaintiffs' appeal on October 9, 2009, and the Daggett claim was filed in state court on October 2, 2009.

There is no doubt that the plain meaning of the word "litigation" included the filing in the Massachusetts Appeals Court in October 2008. Actions that began in 2007 or 2008

predate the policy which began on July 1, 2009; however, the issue still remains whether the section 1983 claims arise from this action.

The unambiguous language of defendant Maryland policy's prior litigation exclusion not only covers claims arising out of prior litigation, but also "all future 'claims' arising from such pending or prior litigation." (Document # 16, Ex. B). As previously noted, the phrase "arising from" is broadly construed. See Utica Mut. Ins. Co. v. Impallaria, 892 F.2d at 1115. All of the section 1983 claims either arise directly from the issues of the prior litigation or from the behavior of the Town of Saugus during such litigation. Therefore, defendant Maryland has satisfied its burden to show that the Daggett claim falls within the prior litigation exclusion.

B. Profit, Advantage or Remuneration

In the alternative, defendant Maryland argues that it owes no duty to defend because the policy excludes coverage based upon the insured "gaining profit, advantage or remuneration to which the insured is not entitled." (Docket Entry # 16, Ex. B). Plaintiff contends that the use of this exclusion can only be justified if the Daggett plaintiffs' claims are taken to be true.

In order to determine if there is a duty to defend, the claims made by the third party defendant must be matched against the policy provisions. See Nascimento v. Preferred Mut. Ins.

17

Co., 513 F.3d at 276 (citing Herbert A. Sullivan Inc., v. Utica Mutual Insurance Company, 788 N.E.2d at 530 (2003)). "If the allegations of the complaint are 'reasonably susceptible of an interpretation that they state or adumbrate a claim covered by the policy terms, the insurer must undertake the defense." Omega Flex, Inc. v. Pacific Employers Ins. Co., 937 N.E.2d 52, 56 (Mass.App.Ct. 2010) (citing Sterilite Corp. v. Continental Cas. Co., 458 N.E.2d 338 (Mass.App.Ct. 1983)). The Daggett complaint sets out claims for money had and received, unjust enrichment, breach of contract, declaratory judgment and violations of section 1983, all based on the Town of Saugus' unlawful demolition of the property and then wrongful collection of the special assessment. (Docket Entry # 1). If these allegations are taken as true, then all of the claims are based on the Town of Saugus' receiving remuneration to which it was not entitled. If the demolition of the property was proper, but the collection of debts was a violation of due process as alleged in Court IV of the Daggett complaint, then the Town of Saugus still received remuneration for which it was not entitled.

That said, the relevant inquiry is whether the claims foreshadow a covered injury. See Essex Ins. Co. v. BloomSouth Flooring Corp., 562 F.3d 399, 403 (1st Cir. 2009) (quoting Mt. Airy Ins. Co. v. Greenbaum, 127 F.3d 15, 19 (1st Cir. 1997)). The duty to defend is based upon the claim itself, even if it is

18

baseless. See Great Northern Ins. Co. v. Paino Assoc., 369 F.Supp.2d 177, 186 (D.Mass. 2005) (citing Mt. Airy Ins. Co. v. Greenbaum, 127 F.3d 15, 19 (1st Cir. 1997)). Any claim for which the Daggett plaintiffs would be entitled to relief, however would be based on the Town of Saugus' receipt of remuneration for which it was not entitled. Therefore, as all of the Daggett plaintiffs' claims are based on remuneration for which the Town of Saugus was not entitled to, defendant Maryland owes no duty to defend.

C.  Reasonable Expectation of Coverage

In its motion for summary judgment, the Town of Saugus also argues in the alternative that defendant Maryland owed a duty to defend because of the reasonable expectation of coverage. (Docket Entry # 14). The Massachusetts Supreme Judicial Court has refused to consider an insured's reasonable expectations if the plain language of the exclusion "unambiguously precludes coverage." Finn v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania, 896 N.E.2d 1272, 1278-79 (Mass. 2008). For the reasons previously explained, the language of the Maryland policy unambiguously precludes coverage. In any event, the Town of Saugus makes no argument that the policy languages is ambiguous, nor is the policy ambiguous on its face. Rather, the Town of Saugus argues that if a policy exception existed that would not apply when it is alleged that a public official did not follow

19

proper procedure, there would be no point to the policy. (Docket Entry # 14). This argument however is flawed because while the exclusion applies when the Town of Saugus received profit or remuneration for which it was not entitled to, it is possible to envision a multitude of circumstances that would fall within the policy and not be based upon such remuneration or profit. The reasonable expectation argument therefore lacks merit.

## CONCLUSION

In accordance with the forgoing discussion, the motion for summary judgment filed by plaintiff (Docket Entry # 13) is **DENIED** and the cross joint motion for summary judgment filed by defendant Zurich and defendant Maryland (Docket Entry # 17) is **ALLOWED**.

    /s/ Marianne B. Bowler
**MARIANNE B. BOWLER**
United States Magistrate Judge